1999 OK 49

**Jill COLLIER, Plaintiff,**

**v.**

**INSIGNIA FINANCIAL GROUP d/b/a Insignia Commercial Group, Defendant.**

**No. 90,482.**

Supreme Court of Oklahoma.

May 25, 1999.

Rehearing Denied June 22, 1999.

Mark Hammons of Hammons & Associates, Inc., Oklahoma City, Oklahoma, for plaintiff.

William B. Federman and Bill P. Guest of Day Edwards Federman Propester & Christensen, P.C., Oklahoma City, Oklahoma, for defendant.

LAVENDER, J.

¶1   Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 et seq., the United States District Court for the Western District of Oklahoma certified the following question:

> May a plaintiff pursue a public policy tort claim under *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24 (1989), for *quid pro quo* sexual harassment and retaliatory constructive discharge in light of the remedies available under federal and state anti-discrimination laws?

## I

### RELEVANT FACTS

¶2   While employed by Insignia Financial Corporation [Insignia], Collier was allegedly subjected to unwelcome sexual remarks and actions by her supervisors.  She also claims that management suggested she flirt with prospective customers.  Collier contends that although she reported the questionable conduct, her employer undertook no remedial acts and in fact retaliated against her by not timely paying commissions which were her due.  She resigned her position, alleging that she was *constructively discharged.*[1]

## II

### THE COURT'S FUNCTION WHEN RESPONDING TO A CERTIFIED QUESTION FROM A FEDERAL COURT

¶3   Inherent in the question posited by the certifying court is the implication that

---

1.   In *Marshall v. OK Rental & Leasing, Inc.,* 1997 OK 34, 939 P.2d 1116, 1119, the Court found that a "constructive discharge" occurred when:

"[A]n employer deliberately makes or allows the employee's working conditions to become so intolerable that the employee has no choice but to quit."

*under the case's facts* the plaintiff [Collier] has adequate civil remedies under applicable federal and *state* statutory regimes for any harm which she might have suffered. Nonetheless, because of the *Burk* tort's underpinnings the adequacy of the state-law remedy for quid pro quo sexual harassment must be assayed in order to resolve the certified question. Since the case is not before us for decision, we refrain (1) from applying the declared *state-law* response to the facts elicited in the federal-court litigation and (2) from passing upon the effect of federal procedure on the issues, facts and proof in the case. We have briefly outlined the case's factual underpinnings to place the certified question in a proper perspective. It is the federal district court that must analyze our answer's impact on the facts ultimately before it.[2]

## III

### THE *BURK* PUBLIC–POLICY TORT: AN *EXCEPTION* TO THE EMPLOYMENT–AT–WILL DOCTRINE

¶4 The submitted query's essence is whether quid pro quo sexual harassment which culminates in an employee's "constructive discharge" is actionable under an exception—first enunciated in *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24—to the common law's employment-at-will doctrine. The *Burk* exception's availability to support a claim for *wrongful discharge* based upon sexual harassment has been considered but a few times since 1989.

¶5 Oklahoma's jurisprudence has historically evinced a great respect—which abides even to this day—for the common-law doctrine that an employment contract of indefinite duration may be terminated "for good cause, for no cause, or even for cause morally wrong" with no liability for breach of contract.[3] It was in this context that the Court in *Burk* first crafted a narrow tort-based *exception* to the employment-at-will doctrine. A private cause of action for wrongful discharge was made necessary because of "*unchecked* employer power" to disregard, and hence frustrate, public-policy mandates which had been articulated by Oklahoma's legislature.[4] Because the exception stands in derogation of the common-law terminable-at-will doctrine and further because public policy is oftentimes amorphous in nature, the *Burk* court limited a *discharged* employee's use of the public-policy tort to situations falling within narrowly prescribed guidelines. The *Burk* tort only lies when an employer violates [by wrongful discharge] public-policy goals which are clearly articulated in existing law—constitutional, statutory or jurisprudential—and then only if there is no adequate, statutorily-expressed remedy for the same. At a minimum the common-law tort embraces situations where an employee is "discharged for refusing to act in violation of an established and well-defined public policy."[5]

## IV

### CERTIFIED QUESTION ANSWERED

¶6 The certified question calls the Court to address two issues, i.e., (1) whether a *constructive* retaliatory discharge is actionable within the *Burk* tort's parameters and (2) whether a *Burk* claim may be pressed for a wrongful discharge occasioned by quid pro quo sexual harassment if there are available federal and state statutory remedies.

### A

### WITHIN THE PARAMETERS SET FORTH BELOW A RETALIATORY CONSTRUCTIVE DISCHARGE CAN SERVE AS A PREDICATE

### FOR A *BURK* TORT

¶7 Since its first appearance as a labor law concept under the National Labor

---

2. *Brown v. Ford,* 1995 OK 101, 905 P.2d 223, 226.

3. *Hayes v. Eateries, Inc.,* 1995 OK 108, 905 P.2d 778, 781; *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24, 26. *See also Hutton v. Watters,* 132 Tenn. 527, 179 S.W. 134 (1915).

4. *Burk v. K–Mart Corp.,* 1989 OK 22, 770 P.2d 24, 28.

5. *Burk, supra* note 3 at *29.*

Relations Act, the constructive discharge doctrine has been accorded acceptance among the various U.S. Circuit Courts of Appeal in Title VII discrimination cases. Today Collier urges Oklahoma to allow a retaliatory constructive discharge to suffice as the basis for bringing a *Burk*-type claim.

¶ 8   While the concept of retaliatory "constructive discharge" has been considered in conjunction with several *Burk* claims, Oklahoma's extant jurisprudence has never specifically approved it as a basis for bringing the public-policy tort. The public-policy tort has as its focus the remediation of wrongful discharges (as that term is delimited by *Burk*), regardless whether they are explicit or constructive. Discharges falling within the latter class are nonetheless more problematic. Until now the Court has not been called upon to succinctly define the criteria for determining when a constructive discharge has occurred and whether the same will suffice for purposes of the *Burk* exception to the employment-at-will doctrine.

¶ 9   In *Marshall v. OK Rental & Leasing, Inc.*[6] the Court observed that a constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that a *reasonable person*[7] subject to them would resign.[8] While accurate, this statement does not adequately define the outside parameters under which a constructive discharge will support a *Burk*-type claim.

■ ¶ 10   Initially, it must be observed that the *Burk* tort encompasses a broader range of wrongful discharges that just those involving one of the proscribed categories of discrimination articulated in Title VII or the Oklahoma Anti–Discrimination Act. The *Burk* tort is available to redress employer violations of any state-declared public policy which culminate in civilly unremedied employee terminations. The test today adopted for ascertaining whether a constructive discharge has occurred is an objective one which assays the complained of employer's conduct through the eyes of *a reasonable person standing in the employee's shoe* and applies to all constructive discharges pressed under the *Burk* tort's guise. The focus of today's test is upon the impact of the employer's actions, whether deliberate or not, upon a "reasonable" employee. The test requires the trial court to inquire (1) whether the employer either knew or should have known of the "intolerable" work conditions and (2) if the permitted conditions were so intolerable that a reasonable person subject to them would resign. This imposes upon the trial court the obligation to survey the totality of the circumstances which allegedly prompted the constructive discharge, including (but not limited to) the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[9] If the employer's behavior is so *objectively* offensive as to alter the conditions of the plaintiff's employment (causing the employee to resign), a retaliatory constructive discharge can be said to have occurred and may serve as a predicate for bringing a *Burk*-type claim, assuming the tort's other preconditions have been satisfied.

## B

## QUID PRO QUO SEXUAL HARASSMENT IS REMEDIABLE UNDER THE *BURK* TORT'S AEGIS BECAUSE AN *ADEQUATE* STATUTORY REMEDY FOR THE SAME IS NOT PROVIDED BY OKLAHOMA'S ANTI–DISCRIMINATION ACT

■ ¶ 11   Oklahoma's Anti–Discrimination Act (*see* 25 O.S.1991 § 1302) clearly ar-

---

**6.** *Supra* note 2.

**7.** *See* Justice Scalia's remarks in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct..998, 140 L.Ed.2d 201 (1998), where on behalf of the Court he observed:

> "We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering

'all circumstances.' " *Id.*, 523 U.S. at ——, 118 S.Ct. at 1002.

**8.** *Marshall, supra* note 2 at 1119.

**9.** *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). *See also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998).

ticulates a public policy which castigates sexual harassment in the workplace[10] when it provides in pertinent part:

A. It is a discriminatory practice for an employer:

1. To ... discharge[ ] or otherwise discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of race, color, religion, *sex*, national origin, age, or handicap.... [Emphasis added.]

This statutory language condemns conditioning continued employment upon the grant of sexual favors requested of an employee by an employer or supervisor—the essence of quid pro quo sexual harassment.[11] Hence, were a discharged employee able to prove quid pro quo sexual harassment he/she would be able to satisfy one of the public-policy tort's predicates, i.e., an employer's violation of a state-declared public policy.

¶ 12 The other predicate to assertion of the *Burk* exception is the absence of a state-statutory remedy for the public-policy violation. If the Oklahoma Anti–Discrimination Act provides an adequate remedy for the offending sexual harassment, there can be no *Burk* tort. *It does not.*

■ ¶ 13 Central to assessment of the remedial schemes provided for by the Act is the language of 25 O.S.1991 § 1101, which provides in pertinent part:

A. The general purposes of this act are to provide for execution within the state of the *policies* embodied in the federal Civil Rights Act of 1964, the federal Age Discrimination in Employment Act of 1967, and Section 504 of the federal Rehabilitation Act of 1973 to make uniform the law of those states which enact this act, and *to provide rights and remedies substantially equivalent to those granted under the federal Fair Housing Law.* [Emphasis added.]

Construction of this language leads inescapably to the conclusion that while the Legislature meant to incorporate the policies of Title VII (among other federal acts), it intended that the Act's primary remedial scheme be that afforded by the Fair Housing Law. This distinction explains the dichotomous remedial treatment afforded victims under the Act—victims of housing discrimination may elect to pursue a civil cause of action under the terms of 25 O.S.1991 §§ 1502.14 & 1502.15 while those suffering gender-based harassment are provided only an administrative remedy.[12] The statute's text amply evidences that its drafters understood that policies and remedies are distinct since its language differentiates between the two. Should the Legislature wish to direct that the federal remedies provided for in the cited acts are to be the exclusive remedies for violations of the articulated anti-discriminatory policies, it is within its power to do so.[13] Nonetheless, until such time as it so acts, the Court must apply the law as adopted.

■ ¶ 14 When called upon to construe a statutory provision susceptible of more than one meaning, it is incumbent upon the Court to give it that interpretation which frees it from constitutional infirmity. In *Tate v.*

---

10. For purposes of Oklahoma's Anti–Discrimination Act a workplace includes only those businesses with 15 or more employees. *See Brown, supra* note 2 at

11. The Court in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986), observed that sexual harassment—actionable under Title VII—occurs when employees "are asked or required to submit to sexual demands as a condition to obtain employment or to maintain employment or to obtain promotions...."

12. *See Duncan v. City of Nichols Hills,* 1996 OK 16, 913 P.2d 1303, 1309.

13. *See Tate v. Browning–Ferris, Inc.,* 1992 OK 72, 833 P.2d 1218, 1222–23. Where in describing limitations on legislative power in the field of employment discrimination the Court noted:

That act [Civil Rights Act of 1964, Title VII] provides in two separate sections [42 U.S.C. §§ 2000e–7 & 2000h–4] that state laws will be preempted only if they actually conflict with federal law. The United States Supreme Court has interpreted these provisions as explicit disclaimers of any federal intent categorically to preempt state law or to "occupy the field" of employment discrimination. The Nation's highest court describes Title VII as a floor beneath which federally provided protection may not drop rather than a ceiling above which it may not rise.

*Browning–Ferris, Inc.*[14] the Court held that "for remedial purposes, discrimination victims [under the Act] comprise a single class." Nonetheless, while the Act gives discharged victims of handicap discrimination a private cause of action against the offending employer,[15] it only provides an administrative remedy for victims of quid pro quo sexual harassment.[16] Were we to hold that the Oklahoma Anti–Discrimination Act provides the exclusive remedial scheme for wrongful discharges which are the product of sexually discriminatory practices, we would in effect be sanctioning unequal remedies for members of the same class. Oklahoma's Constitution[17] interdicts the passage of special law which would authorize disparate remedies for like-situated (employment-discrimination) victims.[18] Hence, we must conclude that the Legislature did not intend the administrative remedy afforded to sexual-discrimination victims by the Act to be an exclusive remedy.[19] Rather the administrative remedy provided by the Act to employees whose discharge is caused by quid pro quo sexual harassment is cumulative of the common-law *Burk* remedy.[20] The *Burk* tort gives the discharged victim a private cause of action for quid pro quo sexual harassment comparable to that statutorily accorded to victims of handicap discrimination. Hence, our adopted construction of the Act—i.e., that it does not provide the exclusive remedy for quid pro quo sexual harassment which culminates in wrongful discharge—avoids the pitfall of according asymmetrical remedies to members of a single class of employment-discrimination victims.

## V

## SUMMARY

¶ 15 The victim of quid pro quo sexual harassment who has been discharged—either explicitly or constructively—from employment, can maintain a *Burk*-type claim for wrongful discharge. Had the Oklahoma Anti–Discrimination Act—the source of the

14. 1992 OK 72, 833 P.2d 1218, 1230–31.

15. *See* 25 O.S.1991 §§ 1502.14, 1502.15, and 1901. Section 1901 provides in pertinent part:

"If a charge for discrimination in employment on the basis of handicap is filed under the *provisions of Sections 1101 through 1801 of* Title 25 ... and is not resolved to the satisfaction of the charging party ..., the charging party may commence an action for redress against any party who is alleged to have discriminated...."

*See also Atkinson v. Halliburton Co.,* 1995 OK 104, 905 P.2d 772, 776.

16. *See* 25 O.S.1991 § 1501 et seq. The basic remedial process required by the Act necessitates that the victim file a complaint with the Human Rights Commission [Commission] within 180 days of the alleged discriminatory practice's occurrence. If after investigation the Commission finds that an employer has violated the provisions of § 1302, it may (a) order that the parties engage in conciliation, (b) require the respondent to cease and desist from engaging in the unlawful discrimination or (c) seek a restraining order or injunction. The election of a civil action to remedy the Act's violation is available only to remedy discriminatory housing practices [*see* 25 O.S.1991 §§ 1502.14 and 1502.15] and to redress handicap discrimination [*see* 25 O.S.1991 § 1901, *supra* note 15].

17. The terms of OKL.CONST. Art. 5 § 46, state in pertinent part:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
* * * * * *
Regulating the practice or jurisdiction of ... in judicial proceedings or inquiry before the courts ... or other tribunals...." [Emphasis supplied.]
*See Reynolds v. Porter,* 1988 OK 88, 760 P.2d 816, 822; *Maule v. Independent School Dist. No. 9.,* Okl., 1985 OK 110, 714 P.2d 198, 203–204.

18. *See Tate, supra* note 13 at 1230.

19. *Tate, supra* note 13 at 1225. There the Court held:

By statutory mandate the common law remains in full force in this state, unless a statute explicitly provides to the contrary. [12 O.S. 1991 § 2] Oklahoma law does not permit legislative abrogation of the common law by implication ...; rather its alteration must be clearly and plainly expressed.

20. The Court is mindful that *Marshall, supra* note 2, might be read as supportive of a different conclusion. The reader must be cognizant that *Marshall* did not concern quid pro quo sexual harassment, the essence of the certified question here addressed. The harassment there was that of a co-worker and not a supervisor. Nonetheless, to the extent that *Marshall* can be read to support the conclusion that the Oklahoma Anti–Discrimination Act provides an adequate remedy for quid pro quo sexual harassment [*See Marshall, supra* note 2 at 1121], it is disapproved.

articulated public policy proscribing gender-based discriminatory practices in the workplace—afforded victims of sexual harassment the same remedy as that statutorily given to handicap-discrimination victims, the *Burk* tort would not have been available to Collier.

¶ 16  **CERTIFIED QUESTION ANSWERED.**

¶ 17  HODGES, LAVENDER, OPALA, ALMA WILSON and WATT, JJ., concur.

¶ 18  SUMMERS, C.J., dissent in part.

¶ 19  HARGRAVE, V.C.J., SIMMS and KAUGER, JJ., dissent.

¶ 1  KAUGER, J., with whom HARGRAVE and SIMMS, JJ. join dissenting; SUMMERS, C.J., dissents in part and joins KAUGER, J.:

¶ 2  The United States Bankruptcy Court for the Western District of Oklahoma certified the following question pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. Supp.1997 § 1601, *et seq.*:

> May a plaintiff pursue a public policy tort claim under *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989), for *quid pro quo* sexual harassment and retaliatory constructive discharge in light of the remedies available under federal and state anti-discrimination laws?

The majority opinion allows a victim of *quid pro quo* sexual harassment, constructively discharged from employment, to maintain a tort claim for wrongful discharge under *Burk v. K–Mart Corp.*, 1989 OK 22, ¶ 17, 770 P.2d 24. In doing so, it ignores the question certified which calls upon us to consider **both federal and state law.** Instead, the majority looks only to state law and to state law remedies. Why?

¶ 3  Traditionally, we have allowed a *Burk* tort only in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law[1] and there is no other available remedy. I dissent because: 1) federal claims analogous to those outlined in state law are enforceable in Oklahoma courts;[2] 2) current federal law fully protects the employee's rights—she may recover in a jury trial, compensatory and punitive damages, attorney fees, costs and expenses; and 3) the majority opinion contravenes this Court's decisions in *List v. Anchor Paint Mfg. Co.*, 1996 OK 1, ¶ 12, 910 P.2d 1011 and in *Marshall v. OK Rental & Leasing, Inc.*, 1997 OK 34, ¶ 23, 939 P.2d 1116.

¶ 4  Relying on *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, ¶ 18, 833 P.2d 1218, the majority extends the closely circumscribed confines[3] of *Burk* on the basis that Oklahoma's Anti–Discrimination Act [Oklahoma Act], 25 O.S. Supp.1992 § 1301 *et seq.*, provides inadequate relief to a plaintiff pressing a tort-based claim for sexual harassment. The employee in *Tate* charged his employer with racial discrimination and with wrongful discharge for the filing of a complaint with the Equal Employment Opportunity Commission. Under the law as it existed, the employee could not recover money damages for the wrongful discharge. Recognizing that the Oklahoma Act must be construed *in para materia* with the federal Civil Rights Act, 42 U.S.C. § 2000a *et seq.* [Federal Act], this Court extended *Burk* to provide the employee with an adequate remedy—compensatory and punitive damages—then unavailable under federal or state legislation. The law applicable today differs markedly from that in existence when *Tate* was decided.

¶ 5  Title 42 U.S.C. § 1981a (1991) was amended effective November 21, 1991.[4] Un-

1.  *Burk v. K–Mart Corp.*, 1989 OK 22, ¶ 17, 770 P.2d 24.

2.  *Willbourn v. City* of *Tulsa*, 1986 OK 44, ¶ 6, 721 P.2d 803. See also, *McLin v. Trimble*, 1990 OK 74, ¶ 6, 795 P.2d 1035.

3.  *Griffin v. Mullinix*, 1997 OK 120, ¶¶ 9 and 21, 947 P.2d 177; *Marshall v. OK Rental & Leasing, Inc.*, 1997 OK 34, ¶ 9, 939 P.2d 1116; *List v.*

*Anchor Paint Mfg. Co.*, 1996 OK 1, ¶ 6, 910 P.2d 1011; *Groce v. Foster*, 1994 OK 88, ¶ 5, 880 P.2d 902; *Burk v. K–Mart Corp.*, see note 1, supra.

4.  The following section was added to 42 U.S.C. 1991 § 1981a effective November 21,1991, by PL l01–166 (S 1745), 105 Stat. 1071:
    "(a) RIGHT OF RECOVERY.—
    (1) CIVIL RIGHTS.-In an action brought by a complaining party under section 706 or 717 of

like the employee in *Tate*, parties may now request a jury trial [5] and may recover compensatory and punitive damages [6] along with attorneys' fees, costs and expenses.[7] There was a reason to extend *Burk* in *Tate*—inadequate remedies. However, the basis for the application no longer exists. Under the law today, plaintiffs have an avenue for a full and complete recovery.

¶ 6 The change in federal law was foreshadowed in *Tate's* footnote # 13.[8] It was acknowledged in our decisions in *List v. Anchor Paint Mfg. Co.*, 1996 OK 1, ¶ 12, 910 P.2d 1011 and in *Marshall v. OK Rental & Leasing, Inc.*, 1997 OK 34, ¶ 23, 939 P.2d 1116—overruled in part by the majority opinion. Refusing to extend the *Burk* analysis in *List*, we distinguished *Tate* and acknowledged that the statutory scheme allowed the employee to pursue a jury trial and to attempt to recover punitive damages for his age discrimination claim.

¶ 7 The employee in *Marshall* argued that the sexual harassment by a co-worker supported a tort claim for constructive discharge. In refusing to recognize a *Burk*-type exception for sexual harassment, the Court quoted the following passage from *List*:

"Mr. List has adequate statutory remedies, and his claim is not based on retaliation for anything that he did. Instead, Mr. List's claim is based solely upon his status, his age. Because Mr. List's statutory remedies are adequate and his common law claim is based solely on his status, his statutory remedies are exclusive. Thus, he has no common law remedy for constructive discharge."

Relying on *List* and the remedies afforded by Oklahoma's Anti–Discrimination Act, 25 O.S.1991 § 1101(a) **and federal law,** the Court followed *List* in *Marshall* stating:

"We apply this reasoning [referring to *List*] to Marshall's claim for hostile work environment sexual harassment. Marshall's claim is based solely upon her sta-

the Civil Rights Act of 1964 (42 U.S.C.2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C.2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C.1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent."

5. Title 42 U.S.C. § 1981a(c) (1991) provides in pertinent part:
"... If a complaining party seeks compensatory or punitive damages under this section–
(1) any party may demand a trial by jury ..."

6. Title 42 U.S.C. § 1981a(a)(1) provides in pertinent part:
"... In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C.2000e–5) [42 U.S.C.A. §§ 2000e–5 or 2000e–16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C.2000e–2 or 2000e–3) [42 U.S.C.A. §§ 2000e–2, 2000e–3, or 2000e–16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory

and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g) ], from the respondent...."
The cause does not present an issue of disparate impact. Title 42 U.S.C.2000e–2(k)(1)(A) (1991) provides in pertinent part:
"... An unlawful employment practice based on disparate impact is established under this subchapter only if–
(I) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity ..."

7. *McCue v. State of Kansas, Dept. of Human Resources*, 165 F.3d 784, 792 (10th Cir.1999).

8. *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, ¶ 6, fn. # 12, 833 P.2d 1216 provides in pertinent part:
"... The Civil Rights Act of 1981 (Pub.Law 102–166 [S. 1745]; November 21, 1991) amends the Civil Rights Act of 1964 to strengthen and improve federal civil rights law. The amendment provides, among other changes, for jury trials and for compensatory as well as punitive damages for employment discrimination...."

tus; it has nothing to do with her acts. Although Title VII did not provide adequate remedies at the time of Tate, it now allows for jury trial and for compensatory and punitive damages.... An employee who shows that he or she was constructively discharged due to a hostile work environment caused by sexual harassment **has adequate remedies available under Title VII.** In addition, Oklahoma's anti-discrimination statutes also provide adequate remedies. We need not extend the narrow Burk exception to the terminable at-will rule to Marshall's claim." [Emphasis added. Footnotes omitted.]

¶ 8  Here, as in *List* and in *Marshall,* the employee has the opportunity to recover money damages under federal law. Even if the cause had been brought in state court, the extension of *Burk* here would be unnecessary. State courts can and do decide questions of federal law.[9] Federal claims analogous to those outlined in state law are enforceable in Oklahoma courts.[10] The remedies afforded under the Federal Act are available in our courts.

9. *El Paso Natural Gas Co. v. Neztsosie,* —— U.S. ——, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999).

10. *Willbourn v. City of Tulsa,* 1986 OK 44, ¶ 6, 721 P.2d 803. See also, *McLin v. Trimble,* 1990 OK 74, ¶ 6, 795 P.2d 1035.