**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 28, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DARRELL ROLLINS, an individual,

Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,

Defendant-Appellee.

No. 06-5135
(D.C. No. 04-CV-224-JHP-SAJ)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

This case began as two separate proceedings arising out of plaintiff Darrell

Rollins' termination from employment with defendant American Airlines, Inc.

(American), allegedly in retaliation for reporting a subordinate's misuse of spare

aircraft parts. While pursuing administrative relief before the Department of

Labor (DOL) under the federal aviation whistleblower statute, 49 U.S.C. § 42121,

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Rollins filed a state tort action in Oklahoma against American for wrongful discharge in violation of public policy under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989). American removed that action to federal court based on diversity jurisdiction. In the meantime, an order of reinstatement had been issued in a preliminary stage of the DOL proceeding and, when the parties failed to agree on an acceptable arrangement, Mr. Rollins filed a second action in federal district court seeking enforcement of the reinstatement order. The two federal actions were consolidated. Ultimately, the district court ruled for American on all claims. It granted American summary judgment with respect to the *Burk* claim on several alternative grounds, later reaffirming its ruling when Mr. Rollins sought reconsideration. It denied the enforcement claim after learning that Mr. Rollins' administrative complaint had, on administrative review, been found untimely and dismissed, nullifying the reinstatement order. After entry of judgment disposing of all claims, Mr. Rollins timely filed this appeal.

### Enforcement Claim

The district court held that the initial reinstatement order issued by an Occupational Safety and Health Administration (OSHA) officer was immediately nullified when an administrative law judge dismissed the underlying DOL complaint as untimely. *See* 29 C.F.R. § 1979.109(c) (ALJ decision "lifting an order of reinstatement . . . shall be effective immediately"). Anticipating this point, Mr. Rollins argued that the ALJ's decision was itself nullified, leaving the

reinstatement order standing, when the DOL's Administrative Review Board heard his appeal under 29 C.F.R. § 1979.110(b), which states that once an appeal is accepted, "the decision of the [ALJ] shall be inoperative unless and until the Board issues an order adopting the decision, except that a preliminary order of reinstatement shall be effective while review is conducted by the Board." The district court disagreed. Noting that § 1979.109(c) directs that a decision lifting an order of reinstatement "may not be stayed," it read the regulations together to mean that "upon review, the ALJ decision is rendered inoperative, except for that portion . . . dealing with reinstatement," so that "whatever Plaintiff's status was coming out of the ALJ proceedings is maintained for the duration of the DOL Administrative Review Board proceeding." Aplt. App., Vol. II at 588. The court concluded that although plaintiff had been entitled to reinstatement under the OSHA order prior to the ALJ's decision, the portion of that decision lifting the reinstatement order was "still in effect . . .[and] [t]he issue of reinstatement [was] therefore not properly before th[e] Court." *Id.* at 589.

Mr. Rollins challenges the district court's refusal to enforce the preliminary reinstatement order, arguing that its construction of the governing regulations was erroneous. American contends that this aspect of Mr. Rollins' appeal is moot. Noting that the Board has affirmed the ALJ's decision, American argues that even if the reinstatement order had still been in effect when the district court refused to enforce it, any relief in this regard is now conclusively foreclosed in light of the

-3-

Board's subsequent decision finally resolving the administrative proceeding against Mr. Rollins.[1] *See generally United States v. Vera-Flores*, 496 F.3d 1177, 1180 (10th Cir. 2007) ("Where judicial relief will not remedy the appellant's injury, the appellant can no longer satisfy the Article III case or controversy jurisdictional requirement and the appeal is moot." (quotation omitted)).

Mr. Rollins attempts to avoid the force of this argument by suggesting that, even if he can no longer obtain reinstatement based on the vacated administrative order, if the district court erred in refusing to enforce the order when it was in effect, "[a]t a minimum, [he] would be entitled to a remedy for the Defendant's failure to reinstate him from the time of OSHA's Preliminary Order up until the time of the ALJ [decision]." Aplt. Br. at 21. American notes, however, that Mr. Rollins did not seek damages for delay in his reinstatement (and delay had already occurred when this action was filed), and argues that he should not be allowed to interject a request for such relief at this late date just to circumvent the mootness of the case he has pursued up until now. *Cf. CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1277-78 (11th Cir. 2006) (holding otherwise mooted challenge to expired moratorium survived because claim for damages had been included in complaint and preserved for appellate review). We agree. This new claim is plainly late and there are good reasons not to excuse the

---

[1] The Board's decision in this regard was recently affirmed in *Rollins v. Admin. Review Bd.*, 2008 WL 904729 (10th Cir. Apr. 3, 2008) (unpub.).

deficiency. First of all, the governing statute does not even appear to authorize

such a claim. While the section dealing with enforcement actions brought by the

Secretary of Labor affords district courts "jurisdiction to grant all appropriate

relief including, but not limited to, injunctive relief and compensatory damages,"

49 U.S.C. § 42121(b)(5), the section dealing with private actions to enforce DOL

orders states only that a party "may commence a civil action . . . *to require*

*compliance* with such [an] order," *id.* § 42121(b)(6)(A) (emphasis added).

Moreover, given the dismissal of the underlying administrative action as

untimely–demonstrating that the reinstatement order should not have been entered

in the first place–damages for the delay in its effectuation would at this point

reflect an unjustified windfall.[2] These considerations counsel against any

exercise of our discretion that would allow Mr. Rollins to belatedly interject a

damages request so as to resuscitate his moot enforcement claim.

Typically when a claim is mooted on appeal, the district court's disposition

is vacated. That is not necessary here, however, as the district court did not reach

---

[2]     Indeed, practical concerns of this sort have informed some judicial views holding that § 42121(b)(6) does not grant district courts jurisdiction to enforce preliminary reinstatement orders. *See Bechtel v. Competitive Techs., Inc.*, 448 F.3d 469, 474 (2d Cir. 2006) (Jacobs, J., with one judge concurring in result); *Welch v. Cardinal Bankshares Corp.*, 454 F. Supp. 2d 552, 558-59 (W.D. Va. 2006). In light of our disposition on mootness grounds, we need not resolve this other jurisdictional concern. Because jurisdictional issues need not be decided in any particular order, a mootness analysis may obviate resolution of an unsettled question of subject matter jurisdiction. *Boyce v. Ashcroft*, 268 F.3d 953, 955 (10th Cir. 2001); *Kaw Nation v. Norton*, 405 F.3d 1317, 1323 (Fed. Cir. 2005).

the merits but dismissed the enforcement claim as not properly before it. There is no functional inconsistency between that disposition and our conclusion that the matter is now moot and hence beyond the proper reach of any federal court.

### *Burk* Public Policy Claim

Alleging he was discharged in retaliation for reporting another employee's unauthorized removal of aircraft parts, Mr. Rollins asserted a claim in state court under *Burk v. K-Mart Corp.*, which recognized a cause of action for employees terminated in violation of clearly articulated state public policy. 770 P.2d at 28. American removed the case to federal court based on diversity,[3] and later moved for summary judgment. The district court granted the motion for three alternative reasons: (1) a *Burk* claim must be based on a discharge, actual or constructive,

---

[3] Mr. Rollins moved for remand, contending removal was improper because the notice of removal (1) was filed more than thirty days after American should have known the requirements of diversity jurisdiction were satisfied and (2) did not include a sufficient factual basis showing that the value in controversy exceeded the minimum for diversity jurisdiction. The district court denied the motion, holding that Rollins' formal factual admission in discovery that the amount in controversy exceeded $75,000, which was recited in and attached to the notice of removal, was sufficient to support jurisdiction where the complaint had not specified a damage amount, and that American timely sought removal within thirty days of the admission. We agree. *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999) (holding plaintiff's deposition testimony regarding damages sought established amount in controversy and commenced thirty-day removal period); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (holding plaintiff's admission in open court established amount in controversy); *Green v. Harsco Corp.*, No. 99-5139, 2000 WL 745353, at **2-4 (10th Cir. May 25, 2000) (unpub.) (following *Huffman* and *Singer* specifically to uphold removal based on plaintiff's factual admission that claim for damages exceeded requisite jurisdictional amount).

and Mr. Rollins, who elected to terminate his employment after receiving a disciplinary notice for poor job performance, was not actually or constructively discharged; (2) Mr. Rollins failed to show that his role in reporting the removed aircraft parts (as opposed to his job performance) in fact led to the disciplinary proceeding that prompted him to chose termination; and (3) Mr. Rollins failed to demonstrate that his conduct implicated a public policy on which a *Burk* claim could be based. We affirm on (1) and do not reach the issues raised in connection with (2) and (3).[4]

In *Burk*, the Oklahoma Supreme Court recognized a tort remedy "in a narrow class of cases in which *the discharge* [of an at-will employee] is contrary to a clear mandate of public policy." 770 P.2d at 28 (emphasis added); *see also Clinton v. State ex rel. Logan County Election Bd.*, 29 P.3d 543, 545 (Okla. 2001) (noting *Burk* "is a limited restriction on employers' rights to discharge at-will employees"). The court extended *Burk* to constructive discharges in *Collier v.*

---

[4]    American briefly argues that Mr. Rollins has failed to challenge the grant of summary judgment insofar as it rested on grounds (1) and (2) and that, therefore, appellate relief is foreclosed regardless of the strength of his appeal in other respects. *See, e.g.*, *Metzger v. Unum Life Ins. Co. of Am.*, 476 F.3d 1161, 1168 (10th Cir. 2007) (following *Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994), to hold that appellant must challenge all bases for district court ruling in order to preserve meaningful appeal therefrom). We note, however, that Mr. Rollins' appeal does encompass the cited grounds, largely in connection with his challenge to the district court's later denial of his motion to reconsider the grant of summary judgment. *See* Aplt. Br. at 34-41. It is, therefore, necessary for us to confirm at least one of the grounds given for granting (and later refusing to reconsider) summary judgment.

*Insignia Financial Group*, 981 P.2d 321, 323-24 (Okla. 1999), but has never held that it is a remedy for adverse employment actions short of discharge. Rather, the court has stated that a *Burk* plaintiff must prove (1) "that he or she was an at-will employee"; (2) "that he or she *was actually or constructively discharged* from employment"; and (3) "that the employer's discharge decision violated [an] articulated public policy." *Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001) (emphasis added). Numerous decisions, by the intermediate state appellate court and several federal district court judges, have made the point even more explicit by holding that a *Burk* claim must involve "the actual termination of the employer-employee relationship." *Davis v. Bd. of Regents for Okla. State Univ.*, 25 P.3d 308, 310 (Okla. Civ. App. 2001) (holding *Burk* claim could not be based on retaliatory transfer); *see Elliott v. Wyle Labs., Inc.*, No. CIV-07-942-F, 2007 WL 4554178, at *1 (W.D. Okla. Dec. 19, 2007) (unpub.) (holding that allegations of wrongful discipline/demotion did not state *Burk* claim, and collecting like decisions from other district judges in Oklahoma). While these latter decisions do not control here, they do inform our conclusion, based on extant state supreme court authority, that *Burk* did not create an omnibus remedy for adverse employment actions short of discharge that might be related to state public policy concerns.

Of course, if the adverse action in question led the plaintiff to terminate his employment, it could still be actionable provided the standard for constructive

discharge was met. But that standard is very high. It requires that the employer knew or should have known of employment conditions "so intolerable that a *reasonable person* subject to them would resign." *Collier*, 981 P.2d at 324. As the undisputed facts here do not reflect conditions approaching this level of objective intolerability, summary judgment on this ground was proper.

After concerns were raised about his job performance, as to his supervisory duties generally and oversight of the employee who had taken the aircraft parts in particular, Mr. Rollins received a Career Decision Day (CDD) Advisory. This notice specified "areas in which performance improvement is required" and gave Mr. Rollins a day off "to reflect upon the need to improve and to weigh the desire to continue an employment relationship with American," after which he had "to choose one of three options: (1) a commitment to meet all company standards, and thus to continue employment with American [after a transfer to another supervisory position]; (2) voluntary resignation, with specified benefits, in exchange for which the employee agrees not to exercise his right to internally appeal or grieve the company's determination; or (3) a refusal to choose Option 1 or Option 2, which results in termination with the ability to file a grievance or an appeal." Aplt. App., Vol. I at 245, ¶¶ 20-21 (American's statement of undisputed facts on summary judgment); *see id.* at 269, ¶ 1 (Rollins' admission of cited

undisputed facts in response to summary judgment[5]).  Mr. Rollins ultimately

refused to sign the advisory, thereby accepting the termination option.[6]

Mr. Rollins has pointed to nothing in the advisory that remotely involves

objectively intolerable conditions.  Indeed, while he has debated peripheral

points, he has not offered any argument to show that the conditions under which

---

[5]     We note Mr. Rollins now asserts he was not given an opportunity to pursue a grievance after electing to terminate his employment.  Aplt. Br. at 39 & n.5. Aside from obvious waiver problems, this assertion is simply immaterial to our constructive-discharge analysis, which turns on the tolerability of the conditions Mr. Rollins had to accept to continue his employment, not the consequences of his decision to end it.

[6]     Mr. Rollins insists he did not *choose* termination, because he "would not accept *any of the options* offered" in the advisory, Aplt. App., Vol. I at 247, ¶ 30 (emphasis added), and hence his case involves an involuntary-termination claim as opposed to one for constructive discharge.  We disagree.  A blanket refusal to accept the advisory was manifestly a *choice* to *terminate* employment.  Whether Mr. Rollins may pursue a *Burk* claim under the circumstances depends entirely on whether his choice was prompted by conditions so objectively intolerable as to constitute a constructive discharge, as we discuss above.

Even if we were to follow Mr. Rollins' view that he was involuntarily terminated by American in a distinct personnel action after his rejection of the advisory, that would not avail his cause here.  He concedes that his "refusal to make the choice offered by [the advisory] led to his termination," Aplt. Br. at 12, and makes no claim that his facially neutral treatment in this respect was different from any other employee refusing to accept a disciplinary advisory.  In short, he has not advanced or substantiated any claim that enforcement of his advisory was itself a wrongful act.  Rather, his argument–for which he concedes he can find no direct authority–is that *Burk* should apply where an employee refuses continued employment rather than accept what he considers to be improper discipline, *see id.* at 34-38–in other words, that the strict standard for constructive discharge should not apply.  But, as discussed above, the state supreme court has expressly imported the principles of constructive discharge into the *Burk* context, and we are not free to pursue a different course.

-10-

he would have continued in American's employ after the advisory were such as to render his election to leave a constructive discharge.[7]  Merely affirming a commitment to company standards certainly does not qualify.  And, while he would have had to accept a transfer to another supervisory position, he admitted that the transfer was not objectionable.  *Id.* at 247 ¶ 28; *see id.,* Vol. II at 321 (deposition page 103).  His objection to signing the advisory and continuing his employment was simply that it would imply an admission of American's grounds for issuing the advisory.  *Id.,* Vol. II at 313 (deposition page 55).  Even if that were true, Mr. Rollins has not cited any authority to support the facially dubious notion that, when required to sign an adverse performance review or disciplinary notice, an employee may simply elect to quit and claim a constructive discharge.

Mr. Rollins argues at some length that denying a *Burk* remedy for allegedly pretextual disciplinary action, so long as it does not constitute a discharge of the employee, still allows a malicious employer some means to retaliate against whistleblowers without check by state tort law.  That is not an argument properly addressed to the federal courts.

> When proceeding under diversity jurisdiction, federal courts have the duty to apply state law as announced by the state's highest court. Where the state's highest court has spoken, we accept its pronouncement . . . as defining state law unless it has later given

---

[7]    While Mr. Rollins complains that he had inadequate notice in advance of summary judgment that his claim was potentially deficient in this fundamental (and obvious) respect, we note that he has since had the opportunity to make his case on the point both in his motion for reconsideration below and on this appeal.

> clear and persuasive indication that its pronouncement will be modified, limited or restricted.

*Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.,* 454 F.3d 1128, 1134 (10th Cir. 2006) (internal quotations omitted) (citations omitted).  The Oklahoma Supreme Court has, for reasons within its exclusive province, elected to create a state tort remedy for wrongful *discharge*, actual or constructive, and has thus far given no indication of any intention to expand the remedy to lesser forms of discipline or other adverse employment action taken in contravention of public policy.

Accordingly, the district court correctly concluded that Mr. Rollins' *Burk* claim was legally deficient for lack of an actual or constructive discharge.  And that determination is sufficient to warrant the grant of summary judgment on the claim.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-12-

06-5135; <u>Rollins v. American Airlines, Inc.</u>

**LUCERO** J., concurring in the judgment:

I fully join the majority with respect to its disposition of Rollins' claim for enforcement of OSHA's preliminary reinstatement order. I cannot, however, subscribe to the reasoning employed by the court in rejecting Rollins' retaliatory discharge claim based on <u>Burk v. K-Mart Corp.</u>, 770 P.2d 24 (Okla. 1989).

As I view the matter, Rollins' cause of action should be evaluated under the standards applicable to an actual discharge, rather than a constructive discharge. I do not agree that Rollins' refusal to accept any of the options offered in the Career Decision Day Advisory amounted to a resignation. Rollins may have declined to select from the available options, but it was American, not Rollins, that made the final decision to end the employment relationship. Treating this actual discharge as a constructive one essentially flips the doctrine of constructive discharge on its head, and incorrectly forces Rollins to meet the high standard applicable to an employee who <u>does</u> resign, but subsequently argues that he or she was <u>effectively</u> discharged. See <u>Collier v. Insignia Fin. Group</u>, 981 P.2d 321, 324 (Okla. 1999) ("[A] constructive discharge occurs when an employer deliberately makes or allows the employee's working conditions to become so intolerable that <u>a reasonable person subject to them would resign</u>." (emphasis added)). This standard is plainly inapplicable to an employee who was, in fact, discharged. Moreover, American's imposition of a performance advisory does nothing to change the fact that Rollins was discharged, and should not be the basis for

allowing an employer such as American to prevent an employee from later stating a cognizable cause of action under <u>Burk</u>.

Nevertheless, I would affirm the judgment of the district court on the alternative ground that Rollins failed to carry his burden at summary judgment of establishing a genuine issue of material fact with respect to whether his role in reporting the removal of aircraft parts actually led to American's decision to terminate him. I therefore concur in the court's ultimate disposition of this claim and in its judgment.