**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DOUGLAS BOWEN,

      Plaintiff-Appellee and Cross-
      Appellant,

vs.

INCOME PRODUCING
MANAGEMENT OF OKLAHOMA,
INC., a Kansas corporation,

      Defendant-Appellant and Cross-
      Appellee.

Nos. 98-5037 and 98-5051

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTH DISTRICT OF OKLAHOMA
(D.C. No. 96-c-603-K)

---

David R. Cordell (Deirdre O. Dexter and Rebecca S. Woodward, with him on the
briefs), Conner & Winters, P.C., Tulsa, Oklahoma, for Plaintiff - Appellant.

Mark D. Lyons (Kevin Danielson and Charles T. Plake, with him on the briefs),
Lyons & Clark, Tulsa, Oklahoma, for Defendant - Appellee.

---

Before BALDOCK, EBEL, and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

Defendant-Appellant and Cross-Appellee Income Producing Management

of Oklahoma, Inc. (IPMO) appeals from a judgment entered on a jury verdict awarding Plaintiff-Appellee and Cross-Appellant Douglas Bowen money damages of $372,230 on an implied contract claim. IPMO claims that the district court erred in denying its motion for judgment as a matter of law as to the existence of an implied contract. Mr. Bowen, in turn, cross appeals from the jury verdict which held that IPMO did not violate the Americans with Disabilities Act (ADA). The implied contract claim is governed by Oklahoma law, and we exercise jurisdiction under 28 U.S.C. § 1291. We reverse the judgment on the implied contract claim and affirm the ADA claim.

## Background

From 1985 to 1993, Mr. Bowen was employed by Income Producing Management, Inc. (IPM), a corporation which owns and operates several Wendy's restaurants in Kansas. During this time, he was promoted to store manager and area supervisor. In June 1993, a new corporation, IPMO, was formed to buy and manage Wendy's restaurants in Oklahoma. Mr. Bowen, upon his request, was transferred to IPMO and began serving as the area director of the Tulsa restaurants.

On February 15, 1994, an IPMO employee walked into one of the Wendy's restaurants and shot several people. Mr. Bowen sustained a gunshot wound to

the head and was forced to undergo emergency brain surgery. The surgery was successful, although Mr. Bowen complained of short term memory loss, an inability to concentrate, and difficulty in doing simple math as a result of the injury. He returned to work as an area director for IPMO on April 5, 1994. After his return to work, Mr. Bowen expressed concerns about needing to spend more time with his family. He met with IPMO management in November 1994 and, as a result of this meeting, was voluntarily demoted to the position of store manager with fewer hours.

Both before and after this reassignment, IPMO continued to have difficulties with Mr. Bowen's work performance, particularly with his ability to work in cooperation with other employees. On February 21, 1995, IPMO transferred Mr. Bowen to a different Wendy's restaurant due to employee conflicts at the previous store. When this new arrangement did not prove satisfactory, Mr. Bowen was asked to resign. Whether he finally resigned or was terminated is contested, but Mr. Bowen no longer worked for IPMO as of March 15, 1995.

Mr. Bowen brought five claims against IPMO in district court relating to his alleged termination. The district court granted partial summary judgment against him on three of them leaving only an ADA claim and an implied contract claim for trial. A jury found for IPMO on the ADA claim, but also found that the

company had breached an implied contract created by its employee manual when it terminated Mr. Bowen without following certain disciplinary procedures.

A.     Implied Contract

IPMO argues that the district court erred in denying its motion for judgment as a matter of law regarding the existence of an implied contract. Review of a district court's denial of judgment as a matter of law is de novo. Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). Judgment as a matter of law should only be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In making this determination, we construe the evidence in the light most favorable to the non-moving party and do not substitute our judgment of the facts for that of the jury.

Oklahoma follows the doctrine of "employment-at-will"; i.e. an employer can discharge an employee for any reason, in the absence of a contractual provision to the contrary. See Hayes v. Eateries, Inc., 905 P.2d 778, 781 (Okla. 1995). The issue is whether the record contains sufficient evidence to show that IPMO's Policy and Procedure Manual altered Mr. Bowen's at-will employment by creating an implied contract.

The existence of an implied contract is typically a factual question but "[i]f the alleged promises are nothing more than vague assurances, . . . , the issue can

be decided as a matter of law." <u>Vice v. Conoco, Inc.</u>, 150 F.3d 1286, 1289 (10th Cir. 1998) (applying Oklahoma law). Employer guarantees are merely "vague assurances" unless they place <u>substantive restrictions</u> on the reasons an employer may terminate an employee. <u>See</u> <u>Hayes</u>, 905 P.2d at 783. <u>See also</u> <u>Black v. Baker Tools, Inc.</u>, 107 F.3d 1457, 1461 (10th Cir. 1997); <u>Russell v. Board of County Comm'rs</u>, 952 P.2d 492, 502 (Okla. 1997) ("[I]n order to create an implied contract the promises must be definite.").

To determine whether the parties intended to form a contract, five factors are balanced: (a) evidence of "separate consideration" beyond the employee's services; (b) length of employment; (c) employer handbooks and policy manuals; (d) detrimental reliance by the employee; and (e) promotions and commendations. <u>Hinson v. Cameron</u>, 742 P.2d 549, 554-55 (Okla. 1987). As Mr. Bowen's implied contract claim is based primarily upon IPMO's policy manual, we will begin with that factor.

Mr. Bowen points to three sections of the employee manual as "substantive restrictions" sufficient to form an implied contract. First, there is the <u>Personnel Practices: Discipline</u> section:

> The Company uses a system of progressive discipline. Employees are first verbally warned then receive a written warning prior to discharge. However, some actions are so serious that the Company reserves the right to discharge for cause without warning. The following are considered grounds for immediate

discharge without progressive warning: [listing 14 specific grounds] [1]

Aplt. App. at 406. The second section ("Termination of Employment") lists five reasons IPMO uses to discharge employees. It then states that "[u]nder all conditions, proper documentation should be completed prior to the date of termination. . . . Terminations for poor work performance should be consistent with Disciplinary Action/Documentation Policy." Aplt. App. at 338. Finally, the Disciplinary Action/ Documentation Policy specifies a three step process of discipline which IPMO "generally adheres to" and which "can be followed" before terminating an employee: oral warning, written warning, and suspension. Aplt. App. at 321.

Even viewed in the light most favorable to Mr. Bowen, we question whether this language rises to the level of "substantive restrictions" on IPMO's right to terminate. The sections that Mr. Bowen relies upon are replete with permissive language ("generally adheres to"; "are usually handled"; "should be used"; "can be followed"), in contrast to other sections of the manual which speak in a mandatory fashion (i.e. the Sexual Harassment section uses phrases like "will be", "shall not", and "must be").

However, it is unnecessary to decide this issue. Under Oklahoma law, "an

---

[1]IPMO does not allege that Mr. Bowen was fired for violating one of these grounds.

employer may deny (or disclaim) any intent to make the provisions of a personnel manual part of an employment relationship" so long as the disclaimer is clear and the employer's conduct does not negate the disclaimer's effect. Russell, 952 P.2d at 502. See also Avey v. Hillcrest Med. Ctr., 815 P.2d 1215, 1217 (Okla. Ct. App. 1991) (upholding disclaimers that were bold, clear and unambiguous). IPMO has met this standard.

The opening page of the Policy manual states:

> This policy Manual has been prepared as a guide and reference for management personnel at all levels of authority. It describes the basic personnel policies and practices of our Company. You should understand that the Manual does not modify our Company's "at will" employment doctrine nor provide employees any kind of contractual rights.

Aplt. App. at 314. The next page entitled "Introduction to Policy Manual" provides:

> The Manual contains general statements of Company policy and does not include fine details, nor does it form an expressed or implied contract or promise that the policies outlined will be applied in all cases. The Company may add, revoke or modify policies at any time.

Id. at 315. These two sections are almost identical to those involved in Avey where the court found the disclaimers to be clear and unambiguous. 815 P.2d at 1216. A few pages later, the Manual contains an "At Will Employment Notice." "It is the policy of the Company to employ individuals for an indefinite period of

time.  Employment is 'at will', so it can be terminated at any time, with or without cause being shown, by either the employee or employer."  Aplt. App. at 318.  Finally, the Manual provides further on: "This Manual is for informational purposes and does not create any contract."     Id. at 344.

It is hard to imagine a clearer example of a disclaimer.  So long as IPMO's conduct did not negate this disclaimer, it must be upheld.  Mr. Bowen points to Johnson v. Nasca , 802 P.2d 1294 (Okla. Ct. App. 1990) to support his argument that IPMO waived the disclaimer language by its conduct.

In Johnson , an at-will employee argued that she should not have been fired until the company followed the procedures listed in an employee handbook.  The company pointed to disclaimer language listed in the handbook which stated: "This employee handbook has been written as a guide for employees.  It should not be considered a contract or employment agreement between the hospital and employee."  Id. at 1295.  The employee, however, produced evidence that the company always used the handbook procedures when terminating employees.  In reversing the grant of summary judgment for the company, the Oklahoma Court of Appeals held:

> While an employer may disclaim the creation of
> contractual rights, such a disclaimer must be clear.
> Here, the handbook, when viewed in conjunction with a
> pattern of practice indicating the adoption and
> consistent use of these procedures, may lead reasonable
> minds to differing conclusions about the existence of

implied contractual rights to use of the procedures.

Id. at 1297 (footnote omitted).

The present case is distinguishable. First, the disclaimer language used by IPMO is clearer, more specific, and more abundant. Second, the Johnson handbook contained additional language relating to the procedures on the same page as the disclaimer, thus possibly rendering the company's intent ambiguous. No such ambiguous language is present here. Third, Johnson relied upon the fact that there was "no evidence of prior notice of unsatisfactory service" when the employee was terminated. Id. at 1296. Here, Mr. Bowen was transferred on at least one occasion as store manager for his failure to interact well with other IPMO employees. Finally, the record in Johnson showed that other employees were discharged using the handbook procedures. Neither in his brief nor during oral argument did Mr. Bowen direct us to any part of the record containing evidence that IPMO always used its handbook procedures when dealing with other employees. His single proof of past practice was a written warning he received in 1991 while working for IPM, a fact clearly irrelevant with regard to IPMO.

Mr. Bowen's strongest evidence consists of a trial statement made by Don Haynes, IPMO's president, that Mr. Bowen would have been entitled to "due

diligence procedure" if he had been terminated.[2]  Aplee. App. at 663.  Mr. Bowen

would have us take this statement in lieu of other evidence of the practice of the

company.  However, in analyzing a company's practices relating to an implied

contract, the focus must be on actions taken prior to the disputed termination.  A

post-hoc hypothetical statement without more is simply insufficient to create an

employer "pattern of practice" which negates a clearly stated handbook

disclaimer.

The other four factors of the Hinson test are:

- Separate Consideration:  As evidence of additional consideration to support an implied contract, Mr. Bowen points to a Compliance Agreement he signed which restricts his ability to disclose confidential business secrets.  However, this agreement was signed with IPM on June 1, 1993, and cannot serve as consideration for the alleged contract with IPMO.

---

[2] The dissent relies exclusively upon this statement as evidence that IPMO routinely applied its progressive discipline system, thus waiving the handbook disclaimers.  However, this is not supported by the evidence in the case.  First, Haynes was responding to a hypothetical question.  The dissent thus interprets a statement of what IPMO might have hypothetically done as evidence of what IPMO regularly did.  Second, the statement related solely to Bowen, and it would be entirely speculative to deem it sufficient evidence of past company policy or practice with regard to other employees.  Third, and most important, Bowen did not produce any evidence that IPMO ever used the progressive discipline system when dealing with any of its employees.

- Length of Employment: Mr. Bowen was employed with IPMO for less than two years, from June 1993 until March 1995.

- Detrimental Reliance: Mr. Bowen testified that he turned down another job offer in partial reliance upon IPMO's disciplinary procedures. Aplee. App. at 657-58. However, he could not recall which company offered him the job and the policy manual was only one of several reasons for turning down the offer. ("I relied on the fact that I had been promoted, everything was going well and I knew with the policies and procedures manual that we had, if there was a problem, we would go through a disciplinary policy . . . ." Id. at 658).

- Promotions and Commendations: Mr. Bowen was promoted from a temporary to a permanent area director, but was then demoted to store manager. A promotion which is not coupled with "definite statements by the employer sufficient to substantively restrict the reasons the employer might terminate the employee" cannot alone form an implied contract. Hayes, 905 P.2d at 784.

In summary, four of the five factors weigh against Mr. Bowen: (1) the employee handbook clearly disclaimed any intent to form an implied contract; (2) the Compliance Agreement could not serve as separate consideration since it

was signed with IPM, and not IPMO; (3) Mr. Bowen's length of employment with IPMO was under two years; and (4) Mr. Bowen was both promoted and demoted.

Only the detrimental reliance factor weighs in his favor. "Unfortunately, neither the Hinson Court nor any subsequent Oklahoma court has indicated how the five Hinson factors should be weighed when, as here, they weigh in opposite directions." Black, 107 F.3d at 1463. However, Mr. Bowen's partial detrimental reliance in this case in the face of the clear and unambiguous disclaimer is insufficient without more to overcome the other factors. We hold that as a matter of law, no implied contract existed between IPMO and Mr. Bowen. [3] On remand, the district court should vacate the money award and enter judgment for IPMO.

B.    ADA Claim

Mr. Bowen challenges the judgment against him on his ADA claim, asserting that his injuries from the gunshot wound have substantially limited his ability to work and learn. In particular, he introduced evidence that he suffered from memory loss, inability to concentrate, and difficulty in doing simple math. The jury returned a special verdict specifically finding that Mr. Bowen was not

---

[3]Given our holding that no implied contract existed, we need not address IPMO's arguments that the district court abused its discretion in refusing to grant a continuance, and that the damages award was inconsistent with the jury instructions.

substantially limited in either his ability to work or to learn.  When a jury verdict is challenged on appeal, review is limited to determining whether that verdict is supported by substantial evidence when viewed in the light most favorable to the prevailing party.  See Beck v. Northern Natural Gas Co._, 170 F.3d 1018, 1021 (10th Cir. 1999).  "'Substantial evidence, while something less than the weight of the evidence, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence.'"  Id. (citation omitted).

In order to bring a claim under the ADA, Mr. Bowen must first show that he is a disabled person entitled to the protections of the Act.  A disability is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).  Both working and learning are major life activities under the ADA.  29 C.F.R. § 1630.2(i).  The issue is whether there was substantial evidence in the record for the jury to determine that Mr. Bowen was not "substantially limited" in either of these activities.

The EEOC has adopted differing regulations as to the definition of "substantially limits" with regard to working and learning.  For learning, a person suffers a substantial limitation if he is either unable to perform or significantly restricted in performing a major life activity "that the average person in the

- 13 -

general population can perform." 29 C.F.R. § 1630.2(j). For working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). Inability to perform a single, particular job is not a substantial limitation under the Act. Id.

When viewed in the light most favorable to the verdict, the evidence is sufficient to show that, even after his injury, Mr. Bowen retained greater skills and abilities than the average person in general, as well as the average person having comparable training, skills and abilities. Dr. Russell Adams, a clinical neuropsychologist, performed a series of approximately 25 tests on Mr. Bowen to determine the effects of the gunshot injury. In testifying, Dr. Adams noted that even after the injury:

- Mr. Bowen's memory and learning "was basically in the average range." Aplee. App. at 379, 407;

- His "general intellectual function" was in the superior range. Id. at 406;

- His attention and concentration ranged between high average and superior. Id. at 406-07;

- His "speed of information processing" ranged from average to high

- 14 -

average.  Id. at 407.

Moreover, Mr. Bowen himself testified that, even after his injury, he was able to adequately perform each of the individual tasks required of an area director.  Aplt. Supp. App. at 963-65 ("I was able to do all of these functions individually.").

We realize that much of the evidence in the record could lead to differing inferences regarding Mr. Bowen's ability to work and learn.  However, based on the testimony recited above, we find that there is substantial evidence in the record to support the judgment.

AFFIRMED in part, REVERSED in part, and REMANDED.

98-5037/98-5051, <u>Bowen v. Income Producing Management of Oklahoma</u>

**EBEL, Circuit Judge, dissenting in part and concurring in part:**

Although I am in agreement with much of the majority opinion, I disagree with the majority's conclusion that a reasonable jury could not have found Bowen was entitled through the doctrine of implied contract to a course of progressive discipline before his discharge by IPMO. Although IPMO could have terminated Bowen for any reason or no reason, there was, in my opinion, enough evidence on this record to support a jury verdict that IPMO was obligated under an implied contract to follow its disciplinary procedures. I agree with the majority that if the evidence presented at trial had been limited to the employee handbooks, no implied contract rights would have arisen in the face of clear disclaimers contained therein. Under our standard of review and in light of additional evidence presented at trial, however, I would affirm the jury's finding that IPMO breached its implied employment contract with Bowen.

As the majority correctly notes, it is not proper to disturb a jury's verdict unless "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In order to reverse the district court's denial of a motion for judgment as a matter of law, we must conclude that no reasonable jury could have reached this result on the evidence presented. While I believe the majority's analysis of this issue would be persuasive under a less restrictive standard of review, I believe that there was

evidence before the jury supporting an alternative interpretation of Bowen's employment relationship with IPMO. Under the procedural posture of this case, I am bound to assume that the jury chose to believe and rely on this other evidence in reaching its conclusion.

Under Oklahoma law, where disclaimers in an employee handbook purport to negate any contractual reliance on the procedures outlined within, an implied contract may nonetheless arise where additional evidence indicates that the procedures were consistently followed. See Johnson v. Nasca, 802 P.2d 1294, 1297 (Okla. App. 1990) ("[T]he handbook, when viewed in conjunction with a pattern of practice indicating the adoption and consistent use of these procedures, may lead reasonable minds to differing conclusions about the existence of implied contractual rights to use of these procedures."); Russell v. Board of County Commissioners, 952 P.2d 492, 502 (Okla. 1997) ("An employer's conduct–i.e., representations and practices–which is inconsistent with its disclaimer may negate the disclaimer's effect."). In Nasca, the court found the testimony of the employer's personnel director that certain disciplinary procedures outlined in the manual were consistently applied rendered ambiguous the manual's attempt to disclaim any right to the procedures. See id. Thus, an implied contract may result from the consistent pattern or practice of an employer in conformity with its policies, despite disavowing language in the manuals.

In the present case, the jury was presented with evidence that IPMO consistently applied its system of progressive discipline and that Bowen was entitled to those procedural safeguards of his employment. At trial, IPMO's president, Don Haynes, was asked whether, "[i]f Mr. Bowen was terminated due to poor work performance, was he entitled to have due process and the disciplinary/action documentation policies followed?" Haynes replied: "Sure. If [Bowen] told me he didn't want to resign and he still felt that he wanted to work out of where he was, we would have started the due diligence process of sitting down and creating the documents and being fair in the time frame of doing those documents."[4] (Aple. App. at 663.) This admission by the president of IPMO is sufficient evidence that the progressive discipline system was so routinely applied that it was at least a question for the jury whether the practices and representations of IPMO should defeat the disclaimers. In light of such evidence, the majority's reversal of the jury verdict is unwarranted.

I would also affirm the jury's award of $372,230 in breach of contract damages to Bowen.

Before a verdict of the jury will be set aside as excessive it must appear that the verdict is so excessive as to strike mankind, at first

---

[4] One part of Appellant's defense at trial was that Appellee had voluntarily resigned, while Appellee contended he was terminated. Under our standard of review, we must assume the jury found that Appellee was, in fact, terminated.

blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption.

Park v. Security Bank and Trust Co., 512 P.2d 113, 116 (Okla. 1973). The jury's award was apparently based on the testimony of Dr. Bonham, who calculated the present value of the difference between Bowen's salary with IPMO and his current wages, assuming that Bowen would have continued to work for IPMO until age 65. Once the jury had decided that Bowen had a contractual right to progressive discipline, it might also draw the reasonable inference that Bowen could have thereby corrected any deficiencies in his performance and continued his employment with IPMO until retirement. The damages award therefore does not warrant reversal.

IPMO's claim that the jury misinterpreted the damages instruction is also unpersuasive. The instruction clearly stated that damages should be awarded in the amount "that is needed to put him in as good a position as he would have been if the contract had not been breached." (Aplt. App. at 170.) Generally, "[a]ppellate courts do not impute to a jury the inability to understand correctly the totality of the trial court's instructions, even in a complicated case, nor will courts impute nonfeasance, by disregard of a court's instructions, to a jury." Rasmussen

-4-

Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir. 1978) (citation omitted); see also Whiteley v. OKC Corp, 719 F.2d 1051, 1059 (10th Cir. 1983). In the present case, as previously stated, I find it perfectly reasonable for a jury to decide that the progressive discipline procedures guaranteed by the implied contract would allow him to correct deficient work performance and continue with IPMO. Thus, the instruction allows the jury to award lost wages until Bowen's anticipated retirement.

Finally, I agree with the majority that there was sufficient evidence supporting the jury's finding that Bowen was not substantially limited in his ability to work or learn under the Americans with Disabilities Act. I would therefore reject his cross-appeal for substantially the same reasons presented in the majority's opinion.

For the foregoing reasons, I respectfully dissent from the majority's conclusion that the jury could not reasonably have found the existence of an implied contract between Bowen and IPMO entitling Bowen to a course of progressive discipline. I would therefore affirm the jury's verdict, as well as its damages award. I concur in the majority's rejection of Bowen's cross-appeal.