2003 OK CIV APP 32

**James MINER and Matthew Grudowski, Plaintiffs/Appellants,**

v.

**MID–AMERICA DOOR COMPANY, Defendant/Appellee.**

**No. 96,502.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 22, 2002.

Certiorari Denied March 10, 2003.

---

**214**

Lori L. Young, Baumert, Cummings, Hiatt & Young, Ponca City, for Plaintiffs/Appellants.

Rachel C. Mathis, Jason L. Glass, Richards & Connor, Tulsa, for Defendant/Appellee.

Opinion by JOE C. TAYLOR, Judge:

¶1 Plaintiffs, James Miner and Matthew Grudowski, appeal from the trial court's order granting summary judgment in favor of Defendant, Mid–America Door Company (Defendant or Mid–America), in this action alleged to have stemmed from sexual harassment by Plaintiffs' co-worker and alleged supervisor. The issue on appeal is whether the evidence, viewed in a light most favorable to Plaintiffs, demonstrates that disputed issues of material fact exist to support Plaintiffs' claims. Based on our review of the record and the applicable law, we find that, as to Plaintiffs' theories of recovery based on discrimination and retaliatory discharge under Title VII of the federal Civil Rights Act of 1964 (as amended), disputed facts exist and the trial court erroneously interpreted Oklahoma law. We therefore reverse its judgment in part and remand for further proceedings.

*Background Facts and Procedural History*

¶2 Mid–America is a manufacturer of overhead doors. Plaintiffs, both male, are former assembly line workers who were initially employed in late 1999 to work at the company's Ponca City plant. The parties agree that Plaintiffs' claims arise primarily from verbally abusive and physically threatening conduct by Terry Hutson, a male co-worker who worked on the line. Though Mid–America denied Hutson was Plaintiffs' "supervisor" as Plaintiffs claimed, Plaintiffs presented evidence that Hutson had the authority to direct their daily work activities and assign them tasks. There is no claim that any of the parties is homosexual.

¶3 In deposition testimony, Plaintiffs testified Hutson regularly verbally abused them and physically threatened them, calling them demeaning and humiliating names that focused on their masculinity and genitalia.[1]

---

1. Plaintiffs testified Hutson called them names such as "pussy," "little dick," "little nuts," "dickhead," "bastard," "asshole," "cocksucker," and "motherfucker;" that Hutson said he could show them "what a real man was like" and claimed he (Hutson) had been having sex with Plaintiffs' wives; that Hutson asked Miner if he was afraid of Hutson, and told him he was a "better man" than Miner; that Hutson told Miner and Grudowski that their respective children

Plaintiffs testified this conduct occurred daily and continually, and that their complaints to Mid–America's management were neither taken seriously nor reasonably and promptly addressed. Plaintiff Miner also testified Hutson had physically assaulted him after Miner suggested Hutson should get to work on a project rather than complain about it.

¶ 4 Though Plaintiffs testified Hutson generally was rude to everyone on the job, they testified that they did not hear him make sexually explicit comments and genital references to Mid–America employees who were female, nor did he physically threaten female workers. Though Hutson denied directing his conduct at Plaintiffs "because they were male," he also testified that the only employees to whom he directed such conduct were other male workers. He further testified that he recognized such comments were not appropriate for the workplace.

¶ 5 In February 2000, both Plaintiffs were terminated, purportedly for reasons related to absenteeism. They filed this action after exhausting their administrative remedies with the Oklahoma Human Rights Commission and the Equal Employment Opportunity Commission.

¶ 6 Plaintiffs' petition alleged hostile work environment sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, specifically under 42 U.S.C. § 2000e–2(a)(1), as implemented in Oklahoma by the state Anti–Discrimination Act, 25 O.S.1991 §§ 1101 through 1901.[2] They also asserted state-based, common law tort claims for wrongful termination based on breach of public policy and breach of an implied contract of employment; assault and battery; and intentional infliction of emotional distress. Their allegations included Hutson's abusive behavior; Mid–America's failure to reasonably respond to

Plaintiffs' complaints about the behavior; Mid–America's alleged termination of Plaintiffs in retaliation for complaining about Hutson's behavior and consulting an attorney; and Mid–America's alleged failure to follow the progressive discipline procedure of its employee policy and procedures manual in discharging Plaintiffs.

¶ 7 Mid–America denied Plaintiffs' allegations, asserted a number of affirmative defenses, and, following discovery, moved for summary judgment, arguing the undisputed facts showed Plaintiffs could not prove their claims as a matter of law. The trial court granted the motion in part, finding Hutson's "abusive language and actions ... while vile and repugnant, did not constitute gender based discrimination," and thus could not support Plaintiffs' Title VII discrimination claim. The court further found the undisputed facts failed to support Plaintiffs' claim for breach of implied employment contract, assault and battery, and intentional infliction of emotional distress, and thus entered summary judgment in Mid–America's favor on those theories.

¶ 8 The court, however, denied Mid–America's motion as to Plaintiffs' state-law claim for wrongful (retaliatory) discharge, based in part on its determination that facts were disputed as to whether Plaintiffs' termination was retaliatory, and in part on its determination that the Oklahoma Supreme Court "implicitly" held, in *Collier v. Insignia Financial Group*, 1999 OK 49, 981 P.2d 321, that Title VII does not provide an adequate remedy for retaliatory discharge. Plaintiffs lodged this appeal, asserting error in the court's rulings on their Title VII, breach of implied contract, and intentional tort theories of recovery.[3]

*Standard of Review*

¶ 9 On review of an order granting a motion for summary judgment, we "will ex-

---

were not theirs, but were Hutson's; told Grudowski to "suck his dick"; and physically threatened each man, claiming he could "whip your ass."

**2.** See *Marshall v. OK Rental & Leasing*, 1997 OK 34 n. 3, 939 P.2d 1116, 1122 (*disapproved of on other grounds by Collier v. Insignia Fin. Group*, 1999 OK 49, 981 P.2d 321), noting the Anti-

Discrimination Act was intended to implement the provisions of Title VII in this state.

**3.** In order to bring this appeal, Plaintiffs dismissed without prejudice the state-law wrongful termination claim based on retaliatory discharge. The Supreme Court allowed the appeal to proceed on that basis.

amine the pleadings and evidentiary materials to determine what facts are material to [the] cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one material fact and that this fact is in the movant's favor." *Ross, by and through Ross v. City of Shawnee,* 1984 OK 43, ¶ 7, 683 P.2d 535, 536. Review of such a judgment presents this court with a legal issue, meaning that our examination of the trial court's decision is *de novo,* i.e., without deference to the lower court's determination. *See Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, ¶ 5, 932 P.2d 1100, 1103.

¶ 10 Summary judgment is appropriate only if the record discloses uncontroverted material facts that fail to support any legitimate inference favoring the well-pled theory of the party against whom the judgment was granted. The court must review and construe the evidence presented, together with all inferences and conclusions to be drawn from it, in a light most favorable to the party opposing the motion. *See First Nat'l Bank & Trust Co. of Vinita v. Kissee,* 1993 OK 96, ¶ 7, 859 P.2d 502, 505; *Rose v. Sapulpa Rural Water Co.,* 1981 OK 85, ¶ 2, 631 P.2d 752, 754. "Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different conclusions from the undisputed facts." *Prichard v. City of Okla. City,* 1999 OK 5, ¶ 19, 975 P.2d 914, 917.

*Analysis of Plaintiffs' Claims and Theories of Recovery*

**Title VII—Sexual Harassment**

■ ¶ 11 Under the Civil Rights Act of 1964, it is an unlawful employment practice to discriminate against an individual "because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The Act also prohibits discharge of an employee because the employee "has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). A claim under federal law for discrimination based on sexual harassment pursuant to § 2000e–2 was first established in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d

49 (1986), where the United States Supreme Court recognized that sexual harassment may take two forms: (1) harassment involving the conditioning of employment benefits on sexual favors, known as *quid pro quo* harassment; and (2) harassment that is so severe and pervasive that, while it may not affect economic benefits, it creates a hostile or offensive working environment that effectively alters the victim's conditions of employment and results in an "abusive working environment." *Id.* at 65–67, 106 S.Ct. at 2404–05. *See also Marshall v. OK Rental & Leasing,* 1997 OK 34, ¶¶ 12–13, 939 P.2d 1116, 1119–20 (*disapproved of on other grounds by Collier v. Insignia Fin. Group,* 1999 OK 49, 981 P.2d 321).

¶ 12 Plaintiffs' claims are based on alleged hostility in their work environment that would not have occurred if they had not been male. In other words, they assert that, because of their gender, they were subjected to harassment in the form of verbal and physical abuse that was sufficiently severe and pervasive to create an abusive working environment, and that they were terminated because they complained to management and hired an attorney.

¶ 13 The fact that Plaintiffs and Hutson are all males does not impede Plaintiffs' claim. The United States Supreme Court recognized same-sex sexual harassment as a cognizable claim under Title VII in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). There, a male employee brought an action against his former employer, co-workers, and supervisor based on their conduct of subjecting him to repeated sex-related, humiliating conduct, including threats to his physical well being. Holding specifically that "nothing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant ... are of the same sex," *id.* at 79, 118 S.Ct. at 1001–02, the court delineated the critical areas of inquiry under a Title VII claim as being (1) whether members of one sex are exposed to disadvantageous conditions of employment because of their gender, and (2) whether the behavior in question is so objectively and subjectively offensive as to alter the conditions of the

victim's employment. *See id.* at 80–81, 118 S.Ct. at 1002–03.

¶ 14 The court in *Oncale* emphasized that its decision was not intended to expand Title VII into a "general civility code," however, and that the conduct in question must be viewed in the context of the workplace where it occurs:

[T]he statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex.... [I]t forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment....

In same-sex (as in all) harassment cases, [the] inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.... Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Id.* at 81–82, 118 S.Ct. at 1002–03.

■ ¶ 15 The questions of whether harassment is due to gender and whether it is so severe and pervasive as to alter the conditions of employment and create an abusive working environment present issues of fact. *See O'Shea v. Yellow Tech. Serv., Inc.,* 185 F.3d 1093, 1097–98 (10th Cir.1999). "[T]he severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'" *Id.* at 1098 (quoting *Beardsley v. Webb,* 30 F.3d 524, 530 (4th Cir.1994)).

■ ¶ 16 The first area of inquiry, relating to the "because of gender" element of a claim, does not necessarily require evidence that the harassing conduct was "motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale,* 523 U.S. at 80, 118 S.Ct. at 1002. A victim might also offer evidence that the harasser is motivated by a general hostility toward persons of the harasser's own gender in the workplace, or offer comparative evidence

about how the harasser treats members of both sexes in a mixed-sex workplace. *Id.* at 80–81, 118 S.Ct. at 1002. "[E]ven if some of the alleged conduct was not 'explicitly sexual in nature,' ... if it reasonably could be inferred that the conduct was related to gender or arose out of a context in which admittedly sex and gender-related conduct occurred, then it is for the fact finder to decide whether such an inference should be drawn." *O'Shea,* 185 F.3d at 1097 (quoting *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1265 (1997).) Stated another way, "[a]ny harassment of an employee 'that would not occur *but for* the sex of the employee ... may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII." *Gross v. Burggraf Const. Co.,* 53 F.3d 1531, 1537 (10th Cir.1995) (quoting *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987)) (emphasis added).

■ ¶ 17 As to the second area of inquiry—the severity and pervasiveness element—a plaintiff must show that "the environment was both objectively and subjectively hostile." *Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (1998). The inquiry would necessarily include an evaluation of the nature of the work environment itself, as contemplated by *Oncale.* However, a plaintiff need not demonstrate psychological harm, nor must he show his work suffered as a result of the harassment. *Id.* Again, we note that this area of inquiry has been described as being particularly unsuited for treatment by summary judgment. *O'Shea,* 185 F.3d at 1098.

¶ 18 The Oklahoma Supreme Court has not addressed the issue of same-sex sexual harassment, nor has it addressed in factual terms what it would consider to be acceptable parameters of workplace behavior in the context of a Title VII claim as a matter of law. The court has, however, referred to the language of *Meritor,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49, as defining what constitutes sexual harassment based on hostile work environment—*i.e.,* "when sexual conduct has 'the purpose or effect of unreasonably interfering with an individual's work

performance or creating an intimidating, hostile, or offensive working environment.'" *See Brown v. Ford*, 1995 OK 101 n. 27, 905 P.2d 223, 228. In addition, Justice Opala recently suggested that some members of the Court "must surely have had apprehension of embracing much of what is now in the body of federal hostile-work-environment jurisprudence," based on his observation that the federal "decisional law appears destined to reach a collision course" with permissible restrictions on freedom of speech. *Clinton v. State ex rel. Logan County Election Bd.*, 2001 OK 52, ¶ 9, 29 P.3d 543, 549 (Opala, J., concurring in result).

¶ 19 Though not in a same-sex context, the Tenth Circuit Court of Appeals has addressed hostile environment sexual harassment in a number of cases. The court has recognized that evidence a plaintiff has been repeatedly subjected to verbal abuse and physical threats, which would not have occurred but for the plaintiff's gender, is sufficient to establish a Title VII claim. *See, e.g., Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996 (10th Cir.1996) (evidence that supervisor continuously subjected woman to sexual epithets and offensive, explicit references to genitals and sexual conduct, but that supervisor did not subject male employees to similar treatment even though he also was rude to males, was sufficient to establish hostile environment sexual harassment); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1539 (10th Cir. 1995) ("[E]vidence [of being] subjected to a steady stream of vulgar and offensive epithets because of [one's] gender" is sufficient to establish a hostile environment claim, though admissible evidence of such was not presented in case); *see also O'Shea v. Yellow Tech. Serv., Inc.*, 185 F.3d 1093 (10th Cir. 1999) (court reversed summary judgment for defendant because fact issues existed from which a jury could find plaintiff had been harassed because of her gender, resulting in an abusive working environment).

¶ 20 The federal district court for the Western District of Oklahoma, when presented with a same-sex harassment case, found the evidence sufficient to overcome a summary judgment motion in *Wehrle v. Office Depot, Inc.*, 954 F.Supp. 234 (W.D.Okla. 1996). There, although the allegation was made that the male supervisor allegedly perpetrating the harassment was homosexual, the conduct involved comments of a sexual nature and physical touching of male employees, which the court found sufficient to raise a fact issue as to whether the supervisor's conduct was directed at those employees only because they were male.

¶ 21 Similarly, the Seventh Circuit Court of Appeals found evidence sufficient to overcome summary judgment in *Shepherd v. Slater Steels Corp.*, 168 F.3d 998 (7th Cir.1999). The court was careful, however, to note the distinction between "nothing other than vulgar provocations" and harassment that "leaves room for the inference that the sexual overlay was not incidental—that the harasser was genuinely soliciting sex from the plaintiff or was otherwise directing harassment at the plaintiff because of the plaintiff's sex." *Id.* at 1010–11. In the former situation, if mere non-discriminatory vulgar provocations are "plain on the record," then the issue may be appropriate for summary judgment. *Id.* If the latter situation is presented, however, "then the task of deciding whether the harassment amounts to sex discrimination will fall to the finder of fact." *Id.* at 1011.

¶ 22 Other federal courts of appeal dealing with the matter have reached varied conclusions, all of which depend entirely on the particular facts of each case.[4] In *Lack v. Wal–Mart Stores, Inc.*, 240 F.3d 255 (4th Cir.2001), for example, the Fourth Circuit Court of Appeals refused to affirm a jury's verdict in favor of a male employee who claimed harassment by another heterosexual male, when the only evidence of alleged

---

4. A possible exception to this statement might be presented in a situation—not present in the case at bar—in which a plaintiff claims that he or she was harassed because of his or her sexual orientation. Several courts have held discrimination due to sexual orientation is not within the purview of Title VII's gender-discrimination prohibition and have denied claims on that ground as a matter law. *See e.g., Rene v. MGM Grand Hotel, Inc.*, 243 F.3d 1206, *reh. en banc granted*, 255 F.3d 1069 (9th Cir.2001); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 258 (1st Cir.1999).

harassment were isolated comments that even the plaintiff acknowledged could be characterized as lewd humor, and similar complaints lodged by female employees concerning the conduct. The court noted that the fact female employees had complained, while not absolutely precluding the plaintiff's claim, nonetheless "undercut" his claim "to a substantial extent." *Id.* at 262. The court held that the evidence "in its totality" compelled the conclusion that the plaintiff's supervisor "was just an indiscriminately vulgar and offensive supervisor, obnoxious to men and women alike." *Id.*

¶ 23 In *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372 (8th Cir.1996), on the other hand, the Eighth Circuit Court of Appeals reversed a summary judgment that had been entered against a male heterosexual plaintiff who had frequently been taunted by male co-workers about his masculinity and physically grabbed and jabbed in the genital area. In a pre-*Oncale* opinion recognizing same-sex harassment as actionable, the court held, "Evidence that members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment." *Id.* at 1378. The court of appeals rejected the district court's imposition of a requirement that a plaintiff must show evidence of an anti-male or predominantly female work environment and that the challenged conduct was of a sexual nature or involved sexual favors or comments. "A worker 'need not be propositioned, touched offensively, or harassed by sexual innuendo' in order to have been sexually harassed," the court stated, finding that "[i]ntimidation and hostility may occur without explicit sexual advances or acts of an explicitly sexual nature," and "physical aggression, violence, or verbal abuse may amount to sexual harassment." *Id.* at 1378–79 (quoting *Burns v. McGregor Elec. Ind.*, 989 F.2d 959 (8th Cir.1993)); *see also Schmedding v. Tnemec Co.*, 187 F.3d 862 (8th Cir.1999) (allegations of harassment, which included taunts intended to debase the plaintiff's masculinity and teasing about his "perceived sexual preference," were sufficient to state Title VII discrimination claim).

¶ 24 Applying the foregoing to the case at bar, we conclude that the evidence, viewed in a light most favorable to Plaintiffs, was sufficient to survive Mid–America's summary judgment motion on the issue of gender discrimination, and the trial court erred in holding otherwise. Plaintiffs testified they were subjected to Hutson's verbally abusive and sexually derisive comments on a daily and continual basis. The comments appearing in the record clearly were intended to attack Plaintiffs' masculinity, question their virility, and generally make them feel intimidated and uncomfortable. There also is evidence suggesting that Hutson only treated other male employees in this manner and did not act in the same way toward females. Although there is conflicting testimony as to how frequently and intensely Hutson's conduct occurred, we are constrained to review the evidence only in a light most favorable to Plaintiffs, and we believe the evidence is such that a reasonable juror might conclude that, but for the fact that Plaintiffs were men, they would not have been taunted, teased, and abused.

¶ 25 We reject Mid–America's contention that, because the evidence showed Hutson exhibited harassing behavior to men and women alike—i.e., that he was an "equal opportunity harasser"—Plaintiffs' claims should fail as a matter of law. In the first place, as noted above the evidence submitted by the parties on this issue was conflicting, and there was evidence in the record which would support an inference that Hutson was verbally and physically abusive only to the men but not the women in the workplace. Further, even if Hutson did harass both sexes equally, such conduct is not necessarily fatal to Plaintiffs' case as long they can fulfill the requirement that harassment would not have occurred at all *but* for the fact that they were male. *See Gross*, 53 F.3d at 1537. And, specifically in regard to Mid–America's argument on this point, see *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463–64 (9th Cir.1994), where the Court held that an alleged harasser's abusive behavior to members of both sexes did not preclude a Title VII claim where the evidence demonstrated that, while his abuse of male employees "in no way related to their gender, his abuse of

female employees ... centered on the fact that they were females."

## Title VII—Retaliatory Discharge

■ ¶ 26 The trial court found that, although the evidence demonstrated material facts in dispute as to Plaintiffs' retaliatory discharge claim, the Oklahoma Supreme Court in *Collier v. Insignia Financial Group*, 1999 OK 49, 981 P.2d 321, had "implicitly" held Title VII did not provide a remedy for retaliatory discharge in Oklahoma. It therefore entered judgment against Plaintiffs on that aspect of their Title VII claim. We disagree with the trial court on its legal conclusion as to *Collier's* holding.

¶ 27 As the trial court itself recognized in its summary judgment order, the Supreme Court in *Collier* explicitly addressed only the adequacy of *state law* statutory remedies for sexual harassment. The Court made no specific holding as to remedies under federal law, a fact which was pointed out at the time by the *Collier* dissent,[5] *id.* at ¶¶ 2, 6, 981 P.2d at 327–28 (Kauger, J., dissenting), and more recently by the majority in *Clinton v. State ex rel. Logan County Election Board*, 2001 OK 52, ¶ 7, 29 P.3d 543, 545–46.

■ ¶ 28 Further, Title VII clearly prohibits discharge of an employee because the employee "has opposed any practice made an unlawful employment practice" by Title VII, and contemplates a private right of action for retaliatory discharge which is separate from a claim for gender discrimination. 42 U.S.C. § 2000e–3(a); *see Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1263–64 (10th Cir.1998); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313–14 (7th Cir.1989). Federal courts do not have exclusive jurisdiction to enforce Title VII claims, *Yellow Freight System, Inc. v. Donnelly*, 494

U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), and similar, analogous claims have been enforced by Oklahoma courts, *Willbourn v. City of Tulsa*, 1986 OK 44, ¶ 6, 721 P.2d 803, 805.

¶ 29 We thus conclude that retaliatory discharge is available as a ground of action in a Title VII claim in Oklahoma, and it may be brought and enforced in Oklahoma state courts. To the extent the trial court held otherwise on this issue, its decision is reversed. We do not address, however, the propriety of the trial court's determination that Plaintiffs could continue to pursue their public policy wrongful termination theory pursuant to *Burk v. K–Mart Corp.*, 1989 OK 22, 770 P.2d 24, as that issue is not before us for review.[6]

¶ 30 Because the trial court's judgment as to the Title VII claim was based on its determination that the undisputed facts showed a lack of gender discrimination and that there was no retaliatory discharge claim available in Oklahoma, we also do not address the other assertions of Mid–America's motion for summary judgment, relating to whether Hutson was a supervisory employee, and whether the company's response to Plaintiffs' complaints was sufficient to relieve it from liability as a matter of law. The trial court's judgment was based on its finding that Plaintiffs failed to establish they had been subjected to "gender-based" discrimination; hence, we do not address the other contentions of Mid–America's motion other than to note our review of the record indicates facts were in dispute on the other issues, as well.

## Breach of Implied Contract of Employment

■ ¶ 31 Plaintiffs presented evidence that Mid–America failed to follow the pro-

5. *Collier v. Insignia Fin. Group*, 1999 OK 49, 981 P.2d 321, answered a certified question from a federal district court about the availability of a state-law public policy tort claim for retaliatory constructive discharge if state and federal statutory remedies were available. The Court, in the portion of its opinion addressed to the availability of statutory remedies, addressed only the adequacy of remedies under Oklahoma's Anti–Discrimination Act, but did not discuss the federal Civil Rights Act.

6. We note, however, that the trial court's judgment was entered before the decision of the Oklahoma Supreme Court in *Clinton v. State ex rel. Logan County Election Board*, 2001 OK 52, 29 P.3d 543, where the court held a state-law claim for wrongful discharge based on breach of public policy is not cognizable when there is an adequate federal statutory remedy available.

gressive discipline policy, as set out in the company's employee handbook, prior to terminating them. Specifically, they claim that the policy manual provided that a certain number of written "warnings" would be given to an employee prior to termination due to absence or tardiness, and Plaintiffs did not receive the required number of warnings. Plaintiffs contend the policy manual constituted an implied contract between Mid–America and them, and that Mid–America's failure to follow the technical aspects of its progressive discipline policy in terminating them constituted a breach of implied contract.

¶ 32 It is undisputed, however, that both Plaintiffs read and were aware of the terms of Mid–America's employee handbook. The handbook states on its initial pages that it was developed to describe expectations of employees, to "outline Company policies, programs and benefits," and as a "guide." The handbook also contains the following language:

— Mid–America Door Company is an at-will, non-union employer and reserves the right to terminate the employment of any employee at any time subject to state laws. Each employee must understand that the policies and benefits described in this handbook are not conditions of employment and do not and are not intended to create a contract between Mid–America Door Company and its employees or any specific employee. The policies and procedures do not give rise to vested or implied contractual rights nor create any property rights at any time during employment with the Company. All policies and procedures are subject to change without notice and may be altered or varied by management to address particular situations.

(Located in the "Forward" portion of the handbook, p. 6.)

— Either the employee or Mid–America Door Company may end the employment relationship at will at any time during or after the introductory period, with or without cause or advance notice.

(Located in the "Introductory Period" section of handbook, p. 11)

— Employment with Mid–America Door Company is based on mutual consent.

Both the employee and the Company have the right to terminate employment at will, with or without cause, at any time.

(Located in the "Employment Termination" section of handbook, p. 55.)

Further, at the time of their employment, Plaintiffs each signed an "Acknowledgment by Employee of Receipt of Policies" which states:

I have entered into my employment relationship with Mid–America Door voluntarily and acknowledge that there is no specified length of employment. Accordingly, either I or Mid–America Door Company can terminate the relationship at will, with or without cause, at any time.

Since the information, policies, and benefits described here are necessarily subject to change, I acknowledge that revisions to the handbook may occur, except for [the] policy of employment-at-will.

. . . .

Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document.

 The general rule in Oklahoma is that an employment contract of indefinite duration is terminable at will, without cause, by either party, without incurring liability for breach of contract. *Burk v. K–Mart Corp.,* 1989 OK 22, ¶ 5, 770 P.2d 24, 26. "Such indefinite employment contracts are deemed terminable-at-will. The classic statement of the at-will rule was that an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Id.*

¶ 33 The Oklahoma Supreme Court has recognized that implied contractual provisions may restrict an employer's freedom to discharge an employee at will, and that such restrictions may arise from employee manuals, oral assurances, and the like. *See Hinson v. Cameron,* 1987 OK 49, 742 P.2d 549; *see also Johnson v. Nasca,* 1990 OK CIV APP 87, 802 P.2d 1294. At the same time, however, the Court has recognized that an employer may disclaim or deny any intent to make the provisions of a personnel manual a

binding part of the employment relationship, as long as the disclaimer is clear and the company has not engaged in conduct negating the disclaimer's effect. *Russell v. Bd. of County Comm'rs,* 1997 OK 80, ¶ 24, 952 P.2d 492, 502.

¶ 34 We believe the disclaimer in the Mid–America policy manual governs the outcome in the case at bar. Though Plaintiffs contend Mid–America's conduct negated these provisions, they point only to testimony by Mid–America supervisors stating it was the supervisors' understanding that the manual's procedures should be followed but admitting that the manner of carrying them out in individual cases varied. The handbook does not state the procedures were binding and would be followed in all cases, nor was there evidence that Plaintiffs were orally assured that such was the case. We find the evidence, even when viewed in a light most favorable to Plaintiffs, insufficient to demonstrate that a factual issue existed as to whether Mid–America's conduct negated the handbook's disclaimer and limited the company's right to terminate Plaintiffs without notice. *See Bowen v. Income Producing Mgmt. of Okla., Inc.,* 202 F.3d 1282 (10th Cir.2000) (applying Oklahoma law); *Avey v. Hillcrest Med. Ctr.,* 1991 OK CIV APP 48, 815 P.2d 1215.

¶ 35 The disclaimer language of the Mid–America handbook is clear and unambiguous that the manual was not intended to change the parties' status from terminable-at-will (subject, obviously, to the lawfulness of the termination otherwise). While Plaintiffs undoubtedly will use the handbook and its terms as evidence to support their claim that their termination on grounds of excessive absenteeism was merely a pretext for alleged retaliatory discharge, we reject their theory that the handbook's terms or Mid–America's conduct imposed contractual restrictions on Mid–America's ability to terminate them without notice or cause. The trial court's

entry of summary judgment on this issue therefore was correct and is affirmed.

**Assault and Battery**

¶ 36 James Miner alleged a claim of assault and battery against Mid–America under the doctrine of *respondeat superior,* claiming that Hutson, while at work, grabbed Miner by the shirt and chest hair, pulled him into Hutson's face, and threatened to beat him. Miner testified the incident occurred after Hutson complained about having to perform a work chore and Miner suggested they should go ahead and get the work done. Hutson, on the other hand, testified he recalled physically picking Miner up, but that he had done so after he had asked Miner to move out of his way, and Miner "told me to move him"—*i.e.,* that Miner had invited him to pick him up.

¶ 37 The trial court, relying on *Rodebush v. Oklahoma Nursing Homes, Ltd.,* 1993 OK 160, 867 P.2d 1241, held Hutson's conduct was not in the scope of his employment as a matter of law. The court found that "[u]nlike the employee in *Rodebush* [a nursing home aide], Mr. Hutson's duties did not include physical contact or confrontation with other employees," and Hutson's "decision to grab or push Mr. Miner cannot be considered to be fairly and naturally incident to" Mid–America's business. We agree that the undisputed facts do not support Plaintiff Miner's assault and battery claim against Mid–America for Hutson's alleged attack on Miner.

¶ 38 As noted by the trial court, *Rodebush* sets forth guidance as to an employer's liability under the doctrine of *respondeat superior* for the intentional torts of an employee.[7] Although, generally, an employer may be held vicariously liable for the actions of an employee acting in the scope of his employment, it also is the general rule that "it is not within the scope of an employee's employment to commit an assault upon a

7. In *Rodebush v. Okla. Nursing Homes, Ltd.,* 1993 OK 160, 867 P.2d 1241, the plaintiff was a nursing home resident who suffered from Alzheimer's disease, which caused him to be occasionally combative. The plaintiff was injured when a male nurse's aid, in response to the plaintiff's combativeness while the aide was bathing him, delivered several blows to his face. The plaintiff sued the home based on the doctrine of *respondeat superior* and successfully held it liable for the aide's intentional battery.

third person." *Id.* at ¶ 12, 867 P.2d at 1245. However, the latter rule will not apply if the assault was committed while the employee was engaged in the employer's business, and was committed " 'with a view to further the [employer's] interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the [employer's] business.' " *Id.* (quoting *Russell–Locke Super. Serv., Inc.*, 1935 OK 90, 170 Okla. 377, 40 P.2d 1090).

¶ 39 As applied to this case, even if we presume that Miner's version of the facts is true, we cannot find that a reasonable juror could interpret Hutson's conduct as "furthering Mid–America's interest" when his assault on his fellow employee allegedly was prompted by his *resistance to* a co-employee's encouragement to "get to work." We therefore agree that the evidence does not support Miner's claim against Mid–America for Hutson's intentional tort in these circumstances.[8]

**Intentional Infliction of Emotional Distress**

¶ 40 Finally, in support of their intentional infliction of emotional distress claim, Plaintiffs alleged Mid–America's knowledge of and failure to remedy the "hostile environment, assault and battery, and retaliatory discharge" constituted "extreme and outrageous conduct" which caused "severe emotional distress" to Plaintiffs. Mid–America's summary judgment motion was based on its contention that the evidence was insufficient to support this theory as a matter of law.

¶ 41 Oklahoma recognizes as an independent tort the intentional infliction of emotional distress, also known as the tort of outrage. *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶ 45, 958 P.2d 128, 149. Recovery under the theory is governed by very narrow standards, however, and it is the trial court's responsibility in the first instance to determine whether a defendant's conduct may reasonably be regarded as "suf-

ficiently extreme and outrageous" to meet the standards. *Id.* To successfully pursue an action on this ground, a plaintiff must show the defendant engaged in conduct that was *not only* unreasonable *but also* was " 'beyond all possible bounds of decency' in the setting in which it occurred" and was such that it can be " 'regarded as utterly intolerable in a civilized community.' " *Id.* (quoting Restatement (Second) of Torts § 46(1) and cmt. d).

¶ 42 In recent years, Oklahoma courts have examined a variety of conduct claimed to be outrageous. To borrow a phrase from the Court of Civil Appeals' recent decision in *Gabler v. Holder & Smith, Inc.*, 2000 OK CIV APP 107, ¶ 64, 11 P.3d 1269, 1280, however, "[o]ur appellate courts have consistently found employment related facts similar to those here do not meet the [Restatement's] § 46 criteria." *Id.* Examples of conduct that was not sufficiently outrageous to meet the standard include: *Eddy v. Brown*, 1986 OK 3, 715 P.2d 74, involving a supervisor and foreman ridiculing the plaintiff in the workplace; *Anderson v. Oklahoma Temporary Services, Inc.*, 1996 OK CIV APP 90, 925 P.2d 574, involving six events over a two-year period that included a supervisor making lewd remarks about the plaintiff and embarrassing her by discussing her faults with co-workers; and *Mirzaie v. Smith Cogeneration, Inc.*, 1998 OK CIV APP 123, 962 P.2d 678, involving conduct that included an employer calling the plaintiff in the middle of the night and browbeating him for hours, requiring him to do unnecessary work, and making derogatory sexual comments about the plaintiff's fiancee. In all these cases, the reviewing court determined the conduct was not sufficiently outrageous to hold the defendants liable under the tort.

¶ 43 The trial court in the case at bar found in its judgment that the undisputed facts showed Plaintiffs started complaining about Hutson's conduct shortly after they were initially employed (Miner in September 1999; Grudowski in December 1999), and

---

8. We note our holding as to Miner's assault and battery claim is limited to determining that Hutson was not acting within the scope of his employment for purposes of imposing vicarious liability on Mid–America under the doctrine of *respondeat superior*. The parties do not raise, and our holding does not consider, the company's potential liability under worker's compensation law.

that Mid–America "remedied the conflict ... by reassigning Hutson to another shift on February 8, 2000." The court suggested that Mid–America's action as such was timely and held the facts did not demonstrate the kind of conduct necessary to support an intentional infliction of emotional distress claim as a matter of law. Though we do not agree with the trial court's determination that the facts are undisputed on the issue of how reasonable and timely Mid–America's response was, we nonetheless agree that the company's conduct, *even if untimely and unreasonable,* was not such conduct as could reasonably be found to be "beyond all possible bounds of decency in the setting in which it occurred" or "utterly intolerable in a civilized community." We therefore affirm the entry of summary judgment against Plaintiffs on this theory, as well.

### Conclusion

¶ 44 The trial court's judgment against Plaintiffs on their claims of sexual harassment and retaliatory discharge under Title VII of the Civil Rights Act is reversed. The judgment in favor of Mid–America on Plaintiffs' claims of breach of implied contract of employment, assault and battery, and intentional infliction of emotional distress is affirmed. This cause is remanded for further proceedings consistent with the view expressed herein.

¶ 45 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

STUBBLEFIELD, P.J., and RAPP, J., concur.